**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**LASHAN DANIELS, et al.,**

                 Plaintiffs,

                 v.

**DISTRICT OF COLUMBIA, et al.,**

                 Defendants.

Civil Action No. 11-cv-1331 (RLW)

---

**MEMORANDUM OPINION**

Plaintiffs Lashan Daniels ("Daniels") and her minor son ("M.C.") bring this action against Defendants the District of Columbia and District of Columbia Metropolitan Police Officers Napper, Alvarenga, and Salice in connection with the arrest of Daniels and the detention of M.C. Defendants have moved for partial dismissal of Plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(1). For the following reasons, Defendants' motion is granted in part and denied in part.

**FACTUAL SUMMARY**

On May 18, 2010, Daniels and M.C. returned home to their condominium and saw Officer Napper speaking with a neighbor in one of the other units in the building. (Compl. ¶ 7). As Plaintiffs walked by, the neighbor yelled at Daniels and told her that she was going to "beat her ass!" (Id. ¶ 8). Daniels told Officer Napper she wished to file a complaint; however, Officer Napper declined Daniels' request and told her that the neighbor's statement was not a threat. (Id.). M.C., in attempting to defend his mother, became engaged in a shouting match with his neighbor. (Id. ¶ 9). Plaintiffs allege that Officer Napper chased M.C. up the nearby stairs toward

his home, then placed M.C. in handcuffs and led him back down the stairs.  (Id.).   Officer Napper also placed Daniels in handcuffs at this time.  (Id.).

Shortly thereafter, Officers Alvarenga and Salice arrived on the scene.  (Id. at ¶ 10). Plaintiffs allege that Officers Alvarenga and Salice proceeded to "manhandle" Daniels, ignoring her protests that she was six-months pregnant and would go peacefully.  (Id. ¶ 10).  According to Plaintiffs, Officers Alvarenga and Salice "push[ed], shov[ed] and jerk[ed]" Daniels on their way down the stairs and out of the building.  (Id.).  M.C. was initially placed in Officer Napper's patrol car, but was later released at the scene.  Daniels, however, was not released, and Officer Napper drove Daniels to Seventh District police precinct, subjecting Daniels to "an intentionally violent ride."  (Id. ¶ 11).  Daniels was released several hours later.

On May 18, 2011, Plaintiffs filed suit in the Superior Court of the District of Columbia. Plaintiffs' three-count complaint includes the following claims:  "Assault & Battery" (against all defendants) (Count I); "Intentional/Negligent Infliction of Emotional Distress" (against all defendants) (Count II); and "Deprivation of Civil Rights, 42 U.S.C. § 1983" (against the defendant officers) (Count III). (Compl. ¶¶ 14-22).  On July 21, 2011, Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441(b).

## LEGAL STANDARD

Defendants have moved for partial dismissal of the claims against them under Rule 12(b)(6) for failure to state a claim.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, acceptable as true, to state a claim to relief that is plausible on its face." Anderson v. Holder, 691 F.Supp.2d 57, 61 (D.D.C.2010) (brackets omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, (2007)) (internal quotes omitted)).

A court considering a Rule 12(b)(6) motion must construe the complaint in the light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. In re United Mine Workers of Am. Employee Benefit Plans Litig., 854 F. Supp. 914, 915 (D.D.C. 1994). However, where the well-pleaded facts do not permit a court, drawing on its judicial experience and common sense, to infer more than the "mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. Iqbal, 556 U.S. at 679.

## ANALYSIS

I.   **Count I (Assault & Battery) & Count III (Deprivation of Civil Rights, 42 U.S.C. § 1983)**

   a. **M.C.'s Claims**

Officers Alvarenga and Salice argue that M.C.'s assault and battery and excessive force claims asserted against them in Counts I and III should be dismissed because the complaint fails to allege that either officer used any force against M.C.  (Defs.' Mot. at 4).  The Court agrees that dismissal of these claims is proper because the facts alleged in the complaint suggest that Officer Napper alone had contact with M.C.  Accordingly, the Court will grant Defendants' motion to dismiss M.C.'s claims against Officers Alvarenga and Salice in Counts I and III.[1]

   With respect to M.C.'s assault and battery claim against Officer Napper, Plaintiffs allege that Officer Napper chased M.C. up the stairs, placed him in handcuffs, and put him in the back of his patrol car.  (Compl. ¶¶9-10).  Defendants contend that Officer Napper's actions were

---

[1]   Plaintiffs urge the Court to deny as moot Defendants' motion seeking dismissal of M.C.'s assault and battery claim against Officers Alvarenga and Salice because M.C. is not advancing such a claim against those two defendants.  (Pls.' Opp. at 4).  However, the complaint makes no such differentiation.  Count I alleges that "defendant police *officers*" assaulted and battered "plaintiff *and her minor son*." Id. (emphasis added).  Because it appears from the face of the complaint that M.C. is advancing an assault and battery claim against Officers Alvarenga and Salice, M.C.'s claims against these officers will be dismissed.

justified because he was performing a <u>Terry</u> stop.  <u>See</u> <u>Terry v. Ohio</u>, 392 U.S. 1, 23 (1968)

(holding that "a police officer may in appropriate circumstances and in an appropriate manner

approach a person for purposes of investigating possibly criminal behavior even though there is

no probable cause to make an arrest").

Although a police officer need only a "minimal level of objective justification" in order

to effect a <u>Terry</u> stop, <u>United States v. Goddard</u>, 491 F.3d 457, 460 (D.C. Cir. 2007), it is unclear

based on the present record whether Officer Napper was justified in his detention of M.C.

Relying on <u>United States v. Wardlow</u>, 582 U.S. 119 (2000), Defendants argue that M.C.'s

"unprovoked flight" provides sufficient justification for a <u>Terry</u> stop.  However, the Supreme

Court in <u>Wardlow</u> did not adopt a *per se* rule authorizing the temporary detention of anyone who

flees upon seeing a police officer.  Instead, the Court explicitly rejected the proposition that

flight is "necessarily indicative of wrongdoing."  <u>Wardlow</u>, 528 U.S. at 124.  Therefore, the fact

that M.C. ran upstairs does provide Officer Napper with sufficient justification standing alone to

justify a <u>Terry</u> stop.

Moreover, it is not clear from factual record whether the interaction between M.C. and

Officer Napper extended beyond a <u>Terry</u> stop and into an arrest which requires probable cause.

<u>See</u> <u>Castellon v. United States</u>, 864 A.2d 141, 154 (D.C. 2004) (discussing the "[f]actors relevant

in distinguishing between [a <u>Terry</u> stop and an arrest] are, among others, the length of detention,

the place of detention, the use of handcuffs, the use of weapons and the announcement of an

intent to arrest").  At bottom, Defendants are asking the Court to conclude that Officer Napper's

encounter with M.C. was a <u>Terry</u> stop and that Officer Napper had sufficient justification for that

stop—essentially asking the Court to draw the inferences in the Defendants' favor.  However, at

this stage in the proceedings, where the Plaintiffs are entitled to the benefit off all reasonable

inferences, the Court must conclude that Plaintiffs have adequately alleged that M.C. was subjected to an unjustified Terry stop.  Accordingly, M.C.'s assault and battery claim against Officer Napper will stand, and the motion to dismiss this claim will be denied.

### b.  Daniels' Claims

Officers Alvarenga and Salice move for dismissal of Daniels' common law assault and battery claims against them because the force they allegedly used was not "clearly excessive or unreasonable."  (Defs.' Mot at 5).  The officers also argue that the common law assault and battery claims are barred by the privilege afforded officers assisting in an arrest.  Finally, the officers also maintain that they are entitled to a qualified immunity defense on Daniels' excessive force claims in Count III.

In the District of Columbia, an assault has been defined as "an intentional and unlawful attempt or threat, either by words or acts, to do physical harm[.]"  Holder v. District of Columbia, 700 A.2d 738, 741 (D.C. 1997).  A battery is "an intentional act that causes a harmful or offensive bodily contact."  Id. at 741.

Taken in the light most favorable to the Plaintiffs, the facts alleged in the complaint are consistent with an assault and battery claim against Officers Alvarenga and Salice.  Plaintiffs allege that the officers rushed into the building and "manhandled" Daniels, and that the officers "pushed, shoved, and jerked" Daniels while they brought her out of the building.  Thus, one could easily infer based on these facts that Daniels was assaulted and battered by Officers Alvarenga and Salice during these interactions.  Defendants urge the Court to find that the force used by these officers was not clearly excessive or unreasonable.  However, making such a finding would require the Court to draw the inferences in the Defendants' favor, which the Court cannot do on a motion to dismiss.  Viewing the Plaintiffs' allegations in the light most favorable

to them, and giving them the benefit of all reasonable inferences, the Court concludes that Plaintiffs have adequately alleged that Daniels was assaulted and battered by Officers Alvarenga and Salice.

For Officers Alvarenga and Salice to have qualified immunity under the fellow officer rule, they must have been relying on Officer Napper's assessment at the scene, and such reliance must have been objectively reasonable at the time.  See Bolger v. District of Columbia, 608 F. Supp. 2d 10, 24 (D.D.C. 2009) (citing Barham v. Salazar, 556 F.3d 844, 850 (D.C. Cir. 2009)); see also, Bilida v. McCleod, 211 F.3d 166, 174-75 (1st Cir. 2000) ("Plausible instructions from a superior or fellow officer support qualified immunity where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to conclude that the necessary legal justification for his actions exists (e.g., a warrant, probable cause, exigent circumstances).").  Precisely when Officers Alvarenga and Salice arrived and what knowledge they possessed when they effectuated the arrest of Daniels is currently a matter of speculation.  A more complete factual record is required before the Court can determine whether Officers Alvarenga and Salice were acting on information provided by Officer Napper, and if so, whether that reliance was reasonable.  See Zhi Chen v. Dist. of Columbia, 808 F. Supp. 2d 252, 260 (D.D.C. 2011) (Freidman, J) (denying in part motion for summary judgment when the record was unclear whether the assisting officer was acting on the request of the arresting officer).

Likewise, the current record does not support a finding that Officers Alvarenga and Salice are entitled to qualified immunity.  "A police officer has a qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not in excess of those which the actor reasonably believes to be necessary."  Etheredge v. District of Columbia, 635 A.2d 908, 916 (D.C. 1993) (internal quotes and citations omitted).  Plaintiffs allege that Officers

6

Alvarenga and Salice "pushed, shoved, and jerked" Daniels as they walked her to Officer

Napper's vehicle.  Once could easily infer from the facts alleged, that the force used by Officers

Alvarenga and Salice was "in excess of [the force] which the actor reasonably believe[d] to be

necessary," thus depriving Officers Alvarenga and Salice of any applicable qualified immunity.

Therefore, the Court denies the Defendants' motion to dismiss Daniels' claims against Alvarenga

and Salice in Counts I and III.

## II.      Count II (Intentional/Negligent Infliction of Emotional Distress)

### a.   Intentional Infliction of Emotional Distress

Plaintiffs have also sought relief under the common law tort of intentional infliction of

emotional distress ("IIED").   Under District of Columbia law, a plaintiff seeking relief for IIED

must show: (1) extreme or outrageous conduct on the part of the defendant that (2) either

intentionally or recklessly (3) caused plaintiff severe emotional distress.  Pitt v. Dist. of

Columbia, 491 F.3d 494, 505-06 (D.C. Cir. 2007).

The Defendants argue that Plaintiffs IIED claims fail as a matter of law because Plaintiffs

have alleged no facts that exhibited behavior that rises to the level of outrageousness required for

an IIED claim.  When determining whether specific conduct rises to the extreme and outrageous

level, courts are guided by "(1) applicable contemporary standards of offensiveness and decency,

and (2) the specific context in which the conduct took place."  Kind v. Kidd, 640 A.2d 656, 668

(D.C. 1993).

Plaintiffs argue that they have adequately stated a claim for IIED as to M.C. because they

have alleged that Officer Napper chased M.C. down, placed him in handcuffs and put him in the

back of a police cruiser for no legitimate reason.  (Pls.'s Opp. at 7).  Arguably, Officer Napper's

conduct may be viewed as extreme or outrageous, especially in light of the fact that M.C. is a

minor.  However, the Court need not decide this issue because the complaint does not contain

any allegation that M.C. suffered severe emotional distress.  In order to qualify as severe

emotional distress, the alleged distress must be "of so acute a nature that harmful physical

consequences might be not unlikely to result."  <u>Sere v. Group Hospitalization, Inc.</u>, 443 A.2d 33,

37 (D.C. 1982) (quoting <u>Clark v. Associated retail Credit Men</u>, 105 F.2d 62, 65 (D.C. Cir.

1939)).  Plaintiffs' conclusory allegation that M.C. "suffered . . . emotional distress[] and mental

anguish" does not adequately state a claim for IIED.  Accordingly, the Court will dismiss M.C.

IIED claim.

Daniels, however, has stated a claim for IIED because the allegations, as they pertain to

her, satisfy all three elements of an IIED claim.  According to the complaint, Officers Alvarenga

and Salice pushed, shoved, and jerked Daniels as they brought her out of the apartment building.

After Daniels informed the officers of her pregnant condition and told them she was willing to go

peacefully, Officer Alvarenga responded "who cares bitch," and Officer Salice told her to "shut

the fuck up."  Even after they were informed of Daniels' condition, Officers Alvarenga and

Salice continued to push, shove, and jerk Daniels.  Daniels was then placed into a police car

where Officer Napper subjected her to an "intentionally violent ride" to the precinct.  The day

after the events described above, Daniels visited her doctor who informed her that her unborn

child was experiencing stress.  Daniels was subsequently hospitalized in order to stabilize her

pregnancy.  Assuming the truth of Plaintiffs allegations, the Court concludes that Daniels has

adequately stated a claim for IIED.  Defendants' motion to dismiss this claim will be denied.

### b.  Negligent Infliction of Emotional Distress

Defendants move to dismiss Plaintiffs' claims negligent infliction of emotional distress

against all Defendants because the complaint does not articulate a viable negligence theory.  The

Court agrees.  First, "it is impossible to negligently commit assault and/or battery as the states of mind are separate and incompatible." <u>District of Columbia v. Chinn</u>, 839 A.2d 701, 708 (D.C. 2003).  Moreover, when a negligence claim involves use of excessive force by a police officer, the "negligence must be distinctly pled and based upon at least one factual scenario that presents an aspect of negligence apart from the use of excessive force itself and violative of a distinct standard of care." <u>Chinn</u>, 839 A.2d at 705, 711.  The complaint is devoid of any allegation of negligence or any violation of a standard of care.  Indeed, the allegations in the complaint evince only intentional tortious conduct by Defendants.  (Compl.¶¶ 9-11).  Plaintiffs attempt to save Daniels negligent infliction of emotional distress claim by arguing that her claim is not premised on the use of excessive force, but instead premised on the fact that Daniels was not afforded accommodations for her condition after she was arrested.  However, this theory of negligence was not articulated in the complaint.  Because "[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss[,]" <u>Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.</u>, 297 F.Supp. 2d 165, 170 (D.D.C.2003) (quotation marks omitted), Plaintiffs' negligent infliction of emotional distress claim must fail.

### III.    Counts I & II and Section 12-309 Notice Requirement

Plaintiffs allege that the District of Columbia is liable for the common law torts of the defendant police officers under a theory of *respondeat superior*.  (Compl. ¶ 13).  Defendants argue that Plaintiffs' common law claims against the District are barred because Plaintiffs failed to comply with the notice requirements of D.C. Code § 12-309.  Section 12-309 provides:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the

> Metropolitan Police Department, in regular course of duty, is a
> sufficient notice under this section.

D.C. Code § 12-309 (2001).  According to the D.C. Court of Appeals, the purpose of the

provision is to "provide an early warning to District of Columbia officials regarding litigation

likely to occur in the future."  Pitts v. Dist. of Columbia, 391 A.2d 803, 807 (D.C. 1978).

On November 18, 2010, Plaintiffs' counsel sent a letter to the Mayor of the District of

Columbia, purportedly giving the District notice of Plaintiffs' claims.  The letter provides many

of the details that are set forth in the complaint, including the names and badge numbers of the

three defendant officers.  The letter also states that Daniels intends to file a lawsuit "seeking

monetary damages for what she believes were negligent, intentional and reckless actions and/or

omissions taken by the District of Columbia and the individual police officers[.]"  (Defs.' Mot,

Ex 1).

Defendants contend that the letter submitted to the Mayor is inadequate to place the

District on notice of Plaintiffs' claims because the letter does not state the place of the alleged

injury.  In particular, Defendants note that Daniels' address does not appear anywhere in the

letter.  While the letter does contain some detailed information, and one could infer from the

letter that the events occurred at Daniels' "home," one can only speculate where Daniels'

"home" is located.  Although "precise exactness" is not absolutely necessary to give sufficient

notice to the District, Romer v. Dist. of Columbia, 449 A.2d 1097, 1101 (D.C. 1982), the letter

submitted on Plaintiffs' behalf clearly falls short of the location requirement in Section 12-309.

Winters v. Dist. of Columbia, 595 A.2d 960 (D.C. 1991) (finding location described as "District

of Columbia Jail in Lorton, Virginia" too uncertain, since the D.C. Jail is located in the District

of Columbia and there are seven correctional facilities in Lorton).

Nonetheless, Plaintiffs attempt to invoke the "police report" alternative notice provision of the statute, stating that the "plaintiff's police report most assuredly contains her address." (Pls.' Opp. at 11).  In order to satisfy Section 12-309, a police report must contain the same information that the statute expressly requires of a letter, "with at least the same degree of specificity."  Cambell v. Dist. of Columbia, 568 A.2d 1076, 1078-79 (D.C. 1990).  As the record in this case has not yet been developed, the Court cannot determine whether a police report exists, and, if such a report does exist, whether the report contains sufficiently detailed information to satisfy Section 12-309.  Therefore, Plaintiffs will be given the opportunity to discover whether there exists a police report that could serve as notice of their claim.  Accordingly, Defendants' motion to dismiss Plaintiffs' common law claims against the District for failure to satisfy Section 12-309 will be denied without prejudice.

### IV.    Punitive Damages

As a matter of law, Plaintiffs cannot recover punitive damages for the claims asserted against the District of Columbia.  The District of Columbia is a municipal corporation, see D.C. Code § 1-102 (2001), and is, therefore, immune from punitive damages under 42 U.S.C. § 1983.  City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).  In addition, this Circuit has held that, absent "extraordinary circumstances," punitive damages are unavailable against the District of Columbia under District of Columbia law.  Atchinson v. District of Columbia, 73 F.3d 418, 425 (D.C. Cir. 1996).  Here, Plaintiffs make no allegation that any "extraordinary circumstances" exist to support an award of punitive damages against the District.  Indeed, Plaintiffs have conceded that they are not seeking punitive damages against the District of Columbia.  (Pls.' Opp. at 9).  Accordingly, Defendants' motion to dismiss Plaintiffs' claim for punitive damages against the District of Columbia will be granted.

Defendants have moved to dismiss M.C.'s punitive damages claim against Officers Alvarenga and Salice because the complaint fails to allege facts that establish the requisite state of mind for a punitive damages award.  Plaintiffs did not address this argument in their opposition brief.  Therefore, the Court will treat this argument as conceded and dismiss M.C.'s punitive damages claim against Officers Alvarenga and Salice.  FDIC v. Bender, 127 F.3d 58, 67–68 (D.C. Cir.1997).

However, Daniels' punitive damages claims against Officers Alvarenga and Salice will stand because she has alleged enough facts to support an award of punitive damages.  Under District of Columbia law, an award of punitive damages is appropriate when "the defendant commits a tortious act 'accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's rights, or other circumstances tending to aggravate the injury.' " Jemison v. Nat'l Baptist Convention, USA, Inc., 720 A.2d 275, 285 n. 10 (D.C. 1998) (quoting Washington Med. Ctr. v. Holle, 573 A.2d 1269, 1284 (D.C.1990)).  Proof of the elements establishing a right to punitive damages may be inferred from the acts of the defendant and from circumstantial evidence. Parker v. Stein, 557 A.2d 1319, 1322 (D.C. 1989).

Here, Plaintiffs have alleged that when Daniels advised Officers Alvarenga and Salice that she was six months pregnant, Officer Alvarenga responded "who cares bitch," and Officer Salice advised her to "shut the fuck up."  (Compl. ¶ 10).  Moreover, even after Daniels advised the officers of her condition, they "continued pushing, shoving and jerking [Daniels] down the stairs and out the building in full view of other residents and [Daniels'] children." Id.  Because the Court is satisfied that these allegations support a plausible inference that Officers Alvarenga and Salice committed a tortious act with the requisite scienter to warrant a punitive damages award, Daniels' claim for punitive damages against these officers survives the motion to dismiss.

## **CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part the Defendants' motion to dismiss.  A separate order accompanies this Memorandum Opinion.


 SO ORDERED.

September 30, 2012

                                      _____
                                      Robert L. Wilkins
                                      United States District Judge