| | |
|---|---|
| LASHAN DANIELS, | |
| Plaintiff, | Civil Action No. 11-1331 (BAH) |
| v. | Judge Beryl A. Howell |
| DISTRICT OF COLUMBIA, *et al.* | |
| Defendants. | |

## MEMORANDUM OPINION

The plaintiff in this tort action, LaShan Daniels, alleges that the defendants, the District of Columbia and several named police officers (collectively, "the defendants"), falsely arrested her and caused other damages, including violating her constitutional rights, during an incident at her home. *See* Compl., *generally*, ECF No. 1-1.[1]  The case is scheduled for trial beginning February 18, 2014. *See* Pretrial Order, ECF No. 28.  The defendants, based upon the plaintiff's proposed witness list provided in the Joint Pretrial Statement ("JPS"), at 5–8, ECF No. 32, seek, through a motion *in limine*, to preclude the plaintiff from (1) eliciting testimony from any witnesses regarding the plaintiff's hospitalization immediately after her arrest; (2) calling to testify the four physicians who treated the plaintiff during the aforementioned hospitalization; and (3) introducing any documentary evidence pertaining to the plaintiff's hospital stay. *See* Defs.' Mot. Limine ("Defs.' Mot.") at 1, ECF No. 34; Defs.' Reply Pl.'s Opp'n Defs.' Mot. ("Defs.' Reply") at 8, ECF No. 38.  For the reasons discussed below, the defendants' motion *in limine* is granted in part and denied in part.

---

[1] This matter was removed to this Court on July 21, 2011.  *See* Not. Removal at 2, ECF No. 1.  The operative Complaint can be found in the papers attached to the Notice of Removal at ECF No. 1-1.

# I.    BACKGROUND

The facts of this matter have been summarized previously and need not be repeated in detail here. *See Daniels v. District of Columbia*, 894 F. Supp. 2d 61, 64–65 (D.D.C. 2012).[2] Nevertheless, a brief discussion of the pertinent facts and procedural history is helpful to provide the context for resolution of the pending motion. The plaintiff had, at all times relevant to this matter, a "high risk" pregnancy. Compl. ¶ 10; *see also* Pl.'s Opp'n Defs.' Mot. ("Pl.'s Opp'n") at 3, ECF No. 37. Prior to the incident at issue here, the plaintiff had to visit a prenatal doctor "maybe like once a week, because the pregnancy was high risk." Defs.' Mot. Ex. 1 (Deposition of LaShan Daniels ("Defs.' Daniels Dep.")) at 36:17-19, ECF No. 34-1.[3] The plaintiff admits that prior to the incident she had to receive "an injection once a week" and have medical personnel come to her house to listen to her fetus' heart rate because the plaintiff's "cervix had started dilating when [the plaintiff] was maybe like 13 weeks." *Id.* 37:13–22. The plaintiff also admits that she had two previous high-risk pregnancies, including one child who was born after thirty two weeks, *see id.* at 38:5–11; *see also* Defs.' Mot. Ex. 2 (Excerpt from Plaintiff's Medical Records) at 4, ECF No. 34-2, prompting the plaintiff's doctor to be "really angry with [the plaintiff] because [she] was taking a risk having the baby," Defs.' Daniels Dep. at 38:13–14. The plaintiff's medical records further indicate other health concerns that could have contributed to her high risk pregnancy. *See* Defs.' Mot. Ex. 2 at 3–4.

Following an encounter between the plaintiff, her minor son, a neighbor, and the defendants on May 18, 2010, the plaintiff was arrested and transported to the Seventh District police precinct station. *See Daniels*, 894 F. Supp. 2d at 65; Compl. ¶¶ 8–11. Although the

---

[2] This case was reassigned to the undersigned on January 13, 2014. *See* Reassignment of Civil Case, ECF No. 35.
[3] Portions of the plaintiff's deposition were submitted in connection with the instant motion by both parties. *See* Defs.' Mot. Ex. 1, ECF No. 34-1 (deposition pages 36–38); Pl.'s Opp'n Ex. 1 (Deposition of LaShan Daniels ("Pl.'s Daniels Dep.")), ECF No. 37-1 (deposition pages 1; 28–34; 39; 41; 56–57).

defendants offered to take the plaintiff to a hospital for medical treatment during the trip to the station, the plaintiff declined. *See* Pl.'s Opp'n at 6. Following her release from custody "after several hours," Compl. ¶ 11, the plaintiff sought medical treatment at Washington Hospital Center and was given instructions to follow up with her obstetrician the next day. Pl.'s Opp'n at 7. On May 19, 2010, the day after her arrest, the plaintiff was seen by "Dr. Igbuard,"[4] whom the plaintiff identifies as her "High Risk Doctor." *Id.* Dr. Igbuard told the plaintiff that her fetus was "in stress." *Id.*; *see also* Compl. ¶ 11. The plaintiff was subsequently admitted to the hospital for the next four days to stabilize her pregnancy. Compl. ¶ 11.

The plaintiff alleges that after she was released from the hospital, she was on "strict bed rest and advised to make a follow up visit with [her] OB/GYN doctors in one week and with [her] high risk doctors also within one week." Pl.'s Opp'n at 8; *see also* Compl. ¶ 11. The plaintiff further alleges that "[t]hroughout this ordeal [she] was scared, [frightened], stressed, anxious and suffered from sleepless nights. [She] constantly worried about the health of [her] child, as well as [her] health and the well being of [her] other children." Pl.'s Opp'n at 8.

The plaintiff has identified in the parties' JPS four doctors, Dr. Iqbal Sara, Dr. Melissa Howard Fries, Dr. Michelle Berkley and Dr. Lorraine Gilliam (collectively, the "Medical Witnesses"), as potential witnesses. Absent from the list are the plaintiff's primary care physician, Dr. Lizy Thomas, and the plaintiff's "High Risk Doctor," Dr. Igbuard. *See* Pl.'s Opp'n at 7–8; *see also supra* note 4. The plaintiff has not submitted any expert reports pursuant to Federal Rule of Civil Procedure 26. *See* Pl.'s Opp'n. at 9–10

---

[4] The plaintiff does not clarify in her briefing whether references to "Dr. Igbuard" refer to Doctor Iqbal Sara, whom the plaintiff has noticed as a potential witness in the JPS at 6. Clarifying this issue is unnecessary for the resolution of the instant motion.

## II.    LEGAL STANDARD

The Supreme Court has recognized that "[a]lthough the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials."  *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *see id*. at 40 n.2 (defining motion *in limine* "in a broad sense to refer to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered").  Indeed, Rule 103(d) of the Federal Rules of Evidence mandates that the court must conduct a jury trial to the extent practicable so that inadmissible evidence is not suggested to the jury by any means. FED. R. EVID. 103(d).  Pretrial motions *in limine* are an important mechanism to effectuate this goal of insulating the jury from inadmissible evidence and further the purpose of the rules, generally, to administer the proceedings "fairly . . . to the end of ascertaining the truth and securing a just determination."  FED. R. EVID. 102; *see Banks v. Vilsack*, No. 07-1807, 2013 U.S. Dist. LEXIS 107212, at *7–8 (D.D.C. July 31, 2013) (citing FED. R. EVID. 103(d), court determined that plaintiff's motion to exclude certain evidence would be decided pretrial "[i]n the interest of conducting an efficient jury trial and preventing the jury from hearing inadmissible evidence"); *Brodit v. Cambra*, 350 F.3d 985, 1004–05 (9th Cir. 2003) (noting that motions *in limine* "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury"); 21 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR, FEDERAL PRACTICE AND PROCEDURE:  EVIDENCE § 5042, at 965 (2d ed. 2005) (noting that "the motion in limine . . . still remains a favorite method of the writers for satisfying Rule 103(c)").  Moreover, "[a] pre-trial ruling, if possible, may generally be the better practice, for it permits counsel to make the

necessary strategic determinations." *United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980).

In evaluating the admissibility of proffered evidence on a pretrial motion *in limine* the court must assess whether the evidence is relevant and, if so, whether it is admissible, pursuant to Federal Rules of Evidence 401 and 402. "[T]he burden is on the introducing party to establish relevancy," *Dowling v. United States*, 493 U.S. 342, 351 n.3 (1990), as well as admissibility. Even relevant evidence may be deemed inadmissible and subject to exclusion on multiple grounds, including that "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. "Assessing the probative value of [the proffered evidence] and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) (quoting *United States v. Abel*, 469 U.S. 45, 54 (1984)). "This is particularly true with respect to Rule 403." *Id.*

Under Rule 403, the court must "engage in on-the-spot balancing of probative value and prejudice and . . . exclude even factually relevant evidence when it fails the balancing test." *United States v. Moore*, 651 F.3d 30, 63 (D.C. Cir. 2011) (internal quotation marks omitted). This balancing test is "fact-based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Nuskey v. Hochberg*, 723 F. Supp. 2d 229, 233 (D.D.C. 2010) (quoting *Sprint/United Mgmt. Co.*, 552 U.S. at 387–88). Importantly, "unfair prejudice within [the Rule 403] context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013) (quoting FED. R. EVID. 403 advisory

committee's notes).  Exclusion based on unfair prejudice is particularly important in the case of

expert evidence, which "can be both powerful and quite misleading because of the difficulty in

evaluating it."  *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 595 (1993) (quoting Jack B.

Weinstein, *Rule 702 of the Federal Rules of Evidence Is Sound; It Should Not Be Amended*, 138

F.R.D. 631, 632 (1991)); *Parsi v. Daioleslam*, 852 F. Supp. 2d 82, 86 (D.D.C. 2012) (observing

that "because '[e]xpert evidence can be both powerful and quite misleading,' a court has greater

leeway in excluding expert testimony under Rule 403 than it does lay witness testimony.")

(quoting *Daubert*, 509 U.S. at 595).

Depending upon the nature of the evidentiary issue presented in a pretrial motion *in

limine*, the court must also assess whether a ruling is appropriate in advance of trial or, instead,

should be deferred until trial "'[when] decisions can be better informed by the context,

foundation, and relevance of the contested evidence within the framework of the trial as a

whole.'"  *Herbert v. Architect of the Capitol*, 920 F. Supp. 2d 33, 38 (D.D.C. 2013) (quoting

*Casares v. Bernal*, 790 F. Supp. 2d 769, 775 (N.D. Ill. 2011)) (alteration in original).  The timing

of a decision on the admissibility of contested evidence is a matter within a trial judge's

discretion.  *Banks*, 2013 U.S. Dist. LEXIS 107212, at *6; *Barnes v. District of Columbia*, 924 F.

Supp. 2d 74, 78–79 (D.D.C. 2013) ("The trial judge's discretion extends not only to the

substantive evidentiary ruling, but also to the threshold question of whether a motion in limine

presents an evidentiary issue that is appropriate for ruling in advance of trial."); *Graves v.

District of Columbia*, 850 F. Supp. 2d 6, 11 (D.D.C. 2011).

## III.    DISCUSSION

The defendants' motion challenges the admissibility, generally, of any testimony or

documents "which seek to establish that the Defendants' alleged actions complicated the

Plaintiff's high-risk pregnancy," and, more specifically, the "recently disclosed"[5] testimony of

the plaintiff's four treating physicians. Defs.' Mot. at 1. The basis for the defendants' motion is

straight-forward: the plaintiff has failed properly to designate any medical expert to provide

"medical opinion testimony to support such a causation theory" and, due to noncompliance with

Rule 26 of the Federal Rules of Civil Procedure, the plaintiff may not rely on her treating

physicians to fill the void. *Id.* For the reasons explained below, the Court agrees.

### A.      Treating Physicians Are Experts Under Rule 26

Under Rule 26, the party presenting *any* expert testimony must satisfy several

prerequisites, including disclosure of the identity of the witness offering expert testimony, *see*

FED. R. CIV. P. 26(a)(2)(A), and disclosure of both the subject matter of the expert opinion and a

summary of the facts and opinions to which the witness is expect to testify, *see* FED. R. CIV. P.

26(a)(2)(C). If a witness is "one retained or specially employed to provide expert testimony,"

the Rule 26(a)(2)(A) disclosure "must be accompanied by a written report." FED. R. CIV. P.

26(a)(2)(B). The timing of these expert disclosures, even if a written expert report is not

---

[5] The defendants' complain that the "[p]laintiff has done close to nothing to put the Defendants on notice that she was going to pursue a pregnancy complication medical theory," Defs.' Mot. at 8, and that the defendants "now face[] the prospect of being ambushed at trial," Defs.' Reply at 2. The plaintiff disputes this characterization pointing to her interrogatory responses. Pl.'s Opp'n at 9–10. In response to the defendants' seventh interrogatory, which sought the plaintiff's "complete medical history prior to the incident described in [her] lawsuit," the plaintiff noted that she had a high risk pregnancy and "[a]s a result of the incident" with the defendants she "was hospitalized for several days, given medicine to prevent [her] unborn baby from being born, and was subjected to sonogram examinations every several hours during [her] hospitalization." Pl.'s Opp'n Ex. 2 at 3, ECF No. 37-2. In the same interrogatory answer, the plaintiff provided the names of two of the four doctors she now notices as witnesses. In response to the defendants' seventeenth interrogatory, which sought the plaintiff's medical history after the incident, the plaintiff provided a detailed account of her hospitalization and disclosed one more doctor now noticed as a witness. *See id.* at 4–5. Moreover, in response to the defendants' eighteenth interrogatory, which required the plaintiff to "chronicle [her] recovery" from the incident, the plaintiff reaffirmed that she believed she was hospitalized "[a]s a result of the incident" and "was on complete bed rest" because of the incident. *Id.* at 6. Although these interrogatory responses suggested that the plaintiff might raise a theory of damages, which included her hospitalization, the plaintiff nonetheless failed to provide the requisite expert causation witnesses and reports to assert such a theory properly. *See* Parts III.A and B, *infra*. The plaintiff's mere reference to such a theory and the names of the plaintiff's treating physicians do not satisfy the requirements of Rule 26(a)(2)(A) or Rule 26(a)(2)(C), which are designed to provide clear notice about the witnesses designated to testify as experts on particular subject matters. *See id.* Thus, the plaintiff's interrogatory responses are not a substitute for proper Rule 26 disclosures and do not avoid the type of surprise and prejudice Rule 26 is meant to prevent. *See id.*

required, is "at least 90 days before the date set for trial," unless the court orders a different time. FED. R. CIV. P. 26(a)(2)(D).

It is undisputed that the plaintiff made no disclosures regarding the Medical Witnesses that are required, under Federal Rule of Civil Procedure 26(a)(2)(A) and (C), for these witnesses to present expert opinion testimony under Federal Rule of Evidence 702. As a consequence, the plaintiff implicitly concedes that the proffered Medical Witnesses may not testify as experts. *See* Pl.'s Opp'n at 9 ("[T]he plaintiff has no intention of eliciting 'expert' testimony from plaintiff's treating physicians."). This concession does not end the matter, however, because the plaintiff nonetheless makes clear her intent to elicit from the proffered Medical Witnesses testimony regarding their diagnosis and treatment of the plaintiff. *See* Pl.'s Opp'n at 11 (stating that the Medical Witnesses will be asked to "describe and explain any diagnosis and the treatment prescribed."). It is this testimony that the defendants argue should be precluded. *See* Defs.' Mot. at 1.

The plaintiff bases a substantial portion of her response to the defendants' motion on the contention that "treating physicians are not considered to be expert witnesses," Pl.'s Opp'n at 7, and argues that, by virtue of their role as treating physicians, the Medical Witnesses may testify as to their personal knowledge, including their diagnosis and treatment of the plaintiff, *see id.* The plaintiff is simply incorrect. A close examination of the case law on which the plaintiff relies reveals the error in the plaintiff's argument.

In support of her contention that "treating physicians are not to be treated as expert witnesses," the plaintiff relies heavily on *Hancock v. Washington Hospital Center*, No. 10-487, 2014 WL 60288, at *7–8 (D.D.C. Jan. 7, 2014). That case addressed the necessity for a treating physician to provide an expert disclosure under Federal Rule of Civil Procedure 26(a)(2)(B),

which requires detailed reports regarding the opinion of experts who were "retained or specially employed to provide expert testimony in the case." *See Hancock*, 2014 WL 60288, at *7. The *Hancock* court noted that "[i]t is well-established that a treating physician need not comply with the written report requirements under Rule 26(a)(2)(B) as long as he is testifying to the personal knowledge that he acquired during the care and treatment of a patient." *Id.* This is because the treating physician is not properly classified as an expert who was "retained or specially employed to provide expert witness testimony." *See id.*

Nevertheless, a treating physician who testifies as to her diagnosis and treatment of the patient is still giving expert testimony. Rule 26(a)(2)(A) requires disclosure to the other party of "any witness [the party] may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Rule 702 states that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence to determine a fact in issue." Unless a witness is testifying as an expert pursuant to Rule 702, that witness may only offer opinion that is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). Thus, even a treating physician may not, unless qualified as an expert, testify regarding her opinions "based on scientific, technical, or specialized knowledge." *See id.*

This requirement provoked a tension within the rules since treating physicians were not "specially employed" within the meaning of Rule 26(a)(2)(B) so as to require them to submit a detailed expert report, but they were still testifying as experts. *See* Fed. R. Civ. P. 26(a)(2)(C) advisory committee's note (2010 Amendments) ("This Amendment resolves a tension that has sometimes prompted courts to require reports under Rule 26(a)(2)(B) even from witnesses

exempted from the report requirement.").  The promulgation of Federal Rule of Civil Procedure 26(a)(2)(C) resolved this tension by clarifying the disclosures required from expert witnesses who do not fall within the scope of Rule 26(a)(2)(B) and for whom the disclosure requirements are "considerably less extensive than the report required by Rule 26(a)(2)(B)."  *Id.*  Specifically, Rule 26(a)(2)(C) applies to those witnesses who are testifying as "experts," even though they were not "retained or specially employed" for the purpose of testifying as an "expert."  *See* FED. R. CIV. P. 26(a)(2)(C).  The advisory committee notes to the 2010 Amendments, which established the new subsection at Rule 26(a)(2)(C), expressly recognize that treating physicians are required to submit Rule 26(a)(2)(C) disclosures, stating that "[a] witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705.  *Frequent examples include physicians or other health care professionals and employees of a party who do not regularly provide expert testimony*."  *Id.* (emphasis added).

Testimony as to the diagnosis and treatment of a patient, and the reasons therefore, is beyond the ability of the average lay witness' competency and is necessarily based on "the expert's scientific, technical, or other specialized knowledge," in the form of doctors' medical training and experience.  *See* FED. R. EVID. 702; *see also Zitzka v. Village of Westmont*, No. 07 C 0949, 2011 U.S. Dist. LEXIS 115922, at *34 (N.D. Ill. Oct. 7, 2011) ("Treating physicians are occurrence witnesses to the diagnosis of a patient's condition, diagnosis, and treatment – but they are able to diagnose and treat a patient in a way a lay person could not, because in fact they are experts in the way that is contemplated by Fed. R. Evid. 702.").  Indeed, the plaintiff is presumably offering the Medical Witnesses' testimony to "help the trier of fact to understand the evidence or to determine a fact in issue."  FED. R. EVID. 702(a); *see also Bell v. Gonzales*, No.

03-163, 2005 WL 3555490, at *12 (D.D.C. Dec. 23, 2005). Thus, if the plaintiff wishes her doctors to testify as to her "diagnosis and the treatment prescribed," as she has proffered, that testimony is properly classified as "expert testimony" and subject to the disclosure requirements of Rule 26(a)(2)(C).

The cases relied upon by the plaintiff and by the court in *Hancock* refer not to Rule 26(a)(2)(C) disclosures but to Rule 26(a)(2)(B) disclosures. *See Hancock*, 2014 WL 60288, at *7–8 (citing *Bynum v. MVM, Inc.*, 241 F.R.D. 52, 54 (D.D.C. 2007) and *Riddick v. Wash. Hosp. Ctr.*, 183 F.R.D. 327, 330 (D.D.C. 1998)). While those opinions state that a treating physician may testify without a Rule 26(a)(2)(B) disclosure, they do not address the Rule 26(a)(2)(C) standard and do not, as the plaintiff contends, stand for the proposition that treating physicians are not experts. Indeed, one of the cases relied on by the *Riddick* court makes this distinction clear. *See Riddick*, 183 F.R.D. at 330 (quoting *Wreath v. United States*, 161 F.R.D. 448, 450 (D. Kan. 1995)). In *Wreath*, the court pointed out that Rule 26(a)(2)(B) did not apply to all experts; it only applied to those specially retained for the purposes of providing expert testimony. *See Wreath*, 161 F.R.D. at 449–50 ("Under Rule 26(a)(2)(A), a party is required to disclose the identity of all persons who may be used at trial to present testimony under Fed. R. Evid. 702, 703, and 705. However, under Rule 26(a)(2)(B), only those witnesses 'retained or specially employed' to provide expert testimony in the case are required to provide written reports signed by the witness."). The absence of the requirement for a written expert report did not mean the witness was not testifying as an expert—it merely meant the expert witness was not required to provide a written report before testifying. *See id.* In the context of a treating physician, this means that when "the treating physician testifies only as to the care and treatment of his/her

patient, the physician is not to be considered a specially retained expert notwithstanding that the witness may offer opinion testimony under Fed. R. Evid. 702, 703 and 705." *Id.*[6]

*Riddick* and *Bynum* were decided without the clarification provided by Rule 26(a)(2)(C) and the *Hancock* court was not asked to address the applicability of, or compliance with, Rule 26(a)(2)(C). *See Hancock*, 2014 WL 60288, at *7. By contrast, in the instant matter, the defendants assert that the testimony the plaintiff intends to elicit from the plaintiff's treating physicians is appropriately considered expert testimony and, thus, the plaintiff was subject to the requirements of Rule 26(a)(2)(C). Defs.' Mot. at 6–7; Defs.' Reply at 3–4.

Given the dual roles that a treating physician may have as both a fact and expert witness, the testimony of such a witness "may be difficult to categorize." *See Bell*, 2005 WL 3555490, at *12. Federal Rule of Evidence 701 provides guidance to distinguish those roles, stating that "a witness is not testifying as an expert" if the testimony is confined to that which is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." The plaintiff's attempt to present her treating physicians as mere fact witnesses collapses in the face of her summary of their proffered testimony to "describe and explain any diagnosis and the treatment prescribed." Pl.'s Opp'n at 11. Indeed, the plaintiff asserts that she is planning to call her treating physicians to testify so that she may discuss the "full extent of her alleged damages," which her interrogatory responses make clear include her hospitalization. *Id.* at 1.

"Many courts . . . have recognized the unfairness of permitting a party to employ a physician who treated an injured party to provide testimony extending beyond simply the care of the plaintiff to classic expert opinion regarding causation and prognosis." *Thomas v. Consol.*

---

[6] The other cases relied upon by the plaintiff refer to a District of Columbia Superior Court rule that mirrors 26(a)(2)(B) and, for the same reasons, are similarly inapposite here. *See Gubbins v. Hurson*, 885 A.2d 269, 277 (D.C. 2005) (discussing need for expert report from treating physician under D.C. Superior Court rule that predates Rule 26(a)(2)(C)); *Adkins v. Morton*, 494 A.2d 652, 657 (D.C. 1985) (same).

*Rail Corp.*, 169 F.R.D. 1, 2 (D. Mass. 1996); *see also Kobe v. Haley*, No. 3:11-1146, 2013 WL 4067921, at *4 (D.S.C. Aug. 12, 2013) (holding that treating physicians are often properly classified as "hybrid witnesses" and such witnesses must adhere to the requirements of Rule 26(a)(2)(C)); *Nat'l R.R. Passenger Corp. v. Ry. Express, LLC*, 268 F.R.D. 211, 216 (D. Md. 2010) ("[A] party may not circumvent the requirements of Rule 26 by employing a witness, like a treating physician who treated an injured party, to provide testimony extending into classic expert opinion regarding causation and prognosis.").

The plaintiff does not dispute that she has not designated any of the Medical Witnesses as expert witnesses pursuant to Rule 26(a)(2)(A), nor submitted for any of these witnesses a proper Rule 26(a)(2)(C) disclosure statement that sets out (1) the subject matter of the treating physician's testimony and (2) a summary of the facts and opinions to which the treating physician is expected to testify. *See* Pl.'s Opp'n, *generally*. In the absence of the requisite disclosures, a court must determine an appropriate response to avoid the prejudice and surprise that can result from the offering of expert medical testimony without the requisite disclosures. *See Iacangelo v. Georgetown Univ.*, 272 F.R.D. 233, 234 (D.D.C. 2011) ("The purpose of Rule 26(a)(2) is to prevent unfair surprise at trial and to permit the opposing party to prepare rebuttal reports, to depose the expert, and to prepare for depositions and cross-examination at trial."). *Harvey v. Mohammed*, 941 F. Supp. 2d 93, 99 (D.D.C. 2013), a case on which the defendants rely, *see* Defs.' Mot. at 6, addressed the question of what relief was appropriate in the absence of a Rule 26(a)(2)(C) disclosure. In that case, the defendants, who were seeking to introduce the challenged expert testimony, argued that their disclosure of a treating physician as "an individual 'likely to have discoverable information that . . . Defendants may use to support their defenses'" was sufficient to put the plaintiff on notice that the defendants intended to use the treating

physician as an expert witness. *Id.* at 99. The Court found that, regardless of whether the plaintiff had fair notice of the defendants' proposed use of the treating physician as an expert witness, the defendants' failure to comply with Rule 26(a)(2)(C) would result in a "mandatory" exclusion of the witness "unless the [defendants'] failure to designate him as such was 'substantially justified or . . . harmless.'" *Id.* at 100 (quoting FED. R. CIV. P. 37(c)(1)). The *Harvey* court went on to note that such an exclusion was an "automatic sanction" in the absence of justification. *Id.*

Here, the plaintiff has made no effort to either comply with Rule 26(a)(2)(C) or explain why such failure was "substantially justified or is harmless." In the JPS, the most detailed summary provided by the plaintiff merely states that the Medical Witnesses will "testify as to plaintiff's medical condition at the time of the incident and treatment, as well as to the injuries suffered by the plaintiff and the medical treatment that she received following the incident." JPS at 7. Such a general summary, even if it were timely, which it is not, does not "disclose a summary of the facts and opinions to which each (or any, for that matter) treating professionals might testify . . . . the disclosure makes no mention of who will offer testimony that the accident caused [the plaintiff] to undergo" certain procedures during her hospitalization. *Ibey v. Trinity Universal Ins. Co.*, No. 12-31-M, 2013 WL 4433796, at *3 (D. Mont. Aug. 16, 2013). "Rule 26(a)(2)(C) . . . requires much more." *Id.*

Under Federal Rule of Civil Procedure 37(c)(1), the appropriate sanction for failure to provide a Rule 26 disclosure is not to allow the plaintiff "to use that information or witness to supply evidence on a motion, at a hearing, or at a trial." *See also Harvey*, 941 F. Supp. 2d at 100; *Elion v. Jackson*, 544 F. Supp. 2d 1, 6 (D.D.C. 2008) ("Under Rule 37, the sanction of exclusion of a witness is 'automatic and mandatory unless the party to be sanctioned can show

that its violation . . . was either [substantially] justified or harmless.'") (quoting *NutraSweet Co. v. X-L Engineering Co.*, 227 F.3d 776, 785–86 (7th Cir. 2000)); FED. R. CIV. P. 37 advisory committee notes (1993 Amendments) ("Paragraph (1) prevents a party from using as evidence any witnesses or information that, without substantial justification, has not been disclosed as required by Rules 26(a)(1) . . . . This automatic sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence.").  Thus, the Court must exclude any testimony from the Medical Witnesses that is properly classified as "expert" in nature.  If the Medical Witnesses were solely expert witnesses, they would be excluded altogether.  Yet, as noted, these Medical Witnesses may also be called as fact witnesses to offer testimony about their observations that are not based upon "scientific, technical, or specialized knowledge" under Federal Rule of Evidence 702, so long as this testimony is relevant, admissible and not more prejudicial than probative under Federal Rules of Evidence 401, 402, and 403.  *See Harvey*, 941 F. Supp. 2d at 99 (precluding treating physician from testifying as expert and but allowing testimony "as to facts observed").  Consequently, to the extent that the defendants' motion *in limine* seeks to exclude the Medical Witnesses from offering any non-expert testimony, the motion is denied, with the further limitation on any non-expert testimony explained below.

### B.     All Evidence About The Plaintiff's Hospitalization Must Be Precluded

Since the Medical Witnesses may not provide any expert testimony, what remains for their testimony is, as noted, only that which is not based on "scientific, technical, or other specialized knowledge." FED. R. EVID. 701(c).  That purely factual testimony covers only what the Medical Witnesses observed during the plaintiff's hospitalization, including her mood and appearance at that time.  Evidence of this hospitalization, whether proffered by the plaintiff's

Medical Witnesses or any other witnesses, must be evaluated first under Federal Rule of Evidence 401 to determine if it is relevant and then under Rule 403 to determine whether the introduction of evidence regarding the plaintiff's hospitalization is unfairly prejudicial to the defendants.

### 1. *The Rule 401 Analysis*

Evidence is relevant under Rule 401 if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." FED. R. EVID. 401. The Medical Witnesses may not offer an opinion as to whether the defendants' actions caused the plaintiff's hospitalization, since only an expert may testify to establish such a causal relationship. *See, e.g.*, *Halcomb v. Woods*, 610 F. Supp. 2d 77, 86 (D.D.C. 2009)(noting that "[b]ecause of the complex and multifactorial nature of her emotional distress, [the plaintiff] was required to offer expert testimony to ensure that the jury was not left to speculate as to its cause or causes" of her claimed "severe emotional harm"); *Lasley v. Georgetown Univ.*, 688 A.2d 1381, 1384 (D.C. 1997) ("Our rule for medically complicated cases is that proof of causation normally requires medical opinion testimony."). Since the Medical Witnesses are only allowed to testify as lay witnesses, their testimony is limited to the type of testimony about which other lay witnesses would be able to testify and this does not include the cause of her severe emotional distress related to the plaintiff's intentional infliction of emotional distress ("IIED") claim. *See also Macon v. City of Fort Wayne*, No.11-CV-119, 2012 U.S. Dist. LEXIS 121993, at *22–23 (N.D. Ind. Aug. 28, 2012) (excluding causation testimony from any witness as to IIED claim where plaintiff failed to make requisite disclosures under Rule 26(a)(2)(c) and expert testimony was required for causation); *Cianfaglione v. Rogers*, No. 10-CV-02170, 2012 U.S. Dist. LEXIS 77122, at *6–7 (C.D. Ill. June 4, 2012) (same).

In the absence of causation evidence, any discussion of the plaintiff's hospitalization does not "make a fact more or less probable" regarding the plaintiff's emotional distress claim, since there is no evidence connecting the hospitalization to the defendants' actions and, consequently, no connection between the defendants and the plaintiff's claim to the extent that the plaintiff's claim depends upon the hospitalization as the source of her distress. Therefore, evidence of the hospitalization must be excluded as irrelevant under Federal Rule of Evidence 401.

### 2. *The Rule 403 Analysis*

Even if the plaintiff were able to introduce relevant evidence of her hospitalization, such evidence would be substantially more prejudicial than probative under Federal Rule of Evidence 403. The plaintiff asserts that her Medical Witnesses will "verify that she in fact had a 'high risk' pregnancy, presented for examination after the incident . . . the findings of her examination after the incident (diagnosis), her treatment and the basis therefore." Pl.'s Opp'n at 12. In this explanation, the plaintiff has articulated why the proffered testimony and any other testimony about the plaintiff's hospitalization must be precluded under Rule 403. As the defendants point out, if the plaintiff is able to "premise her damages for intentional infliction of emotional distress on both the alleged triggering event (her arrest) *and* the hospitalization that followed" then the plaintiff's proffered testimony "necessarily requires creating the exact inference that should be precluded under Rule 26(a)(2)(C)—that Plaintiff's arrest resulted in pregnancy complications that required hospitalization." Defs.' Reply at 2 (emphasis in original). Thus, the defendants request that the Court "preclud[e] any mention of Plaintiff's hospitalization during trial." Defs.' Reply at 8.

Even if evidence about the plaintiff's hospitalization were relevant—which, absent expert causation testimony, it is not—Rule 403, with its prohibition on evidence that gives rise to

"unfair" prejudice, is designed to preclude "some concededly relevant evidence [that may] lure the factfinder into declaring guilty on a ground different from proof specific to the offense charged." *United States v. Orenuga*, 430 F.3d 1158, 1164–65 (D.C. Cir. 2005) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)). If the plaintiff's Medical Witnesses were allowed to testify about the plaintiff's hospitalization, the obvious inference to be drawn from such testimony, based on its proximity in time, is that the defendants' actions somehow caused the hospitalization. *See Lasley*, 688 A.2d at 1387 ("[C]ontemporaneity between a medical procedure and an injury is too weak a foundation upon which to infer causation. Correlation and causation are hardly synonymous."). Indeed, any testimony from any witness about the plaintiff's hospitalization would run the same risk and invite the same inference to be drawn. Causation evidence of this kind must be supported by expert testimony. *See, e.g.*, *id.* at 1384 ("Our rule for medically complicated cases is that proof of causation normally requires medical opinion testimony."). In this matter, the plaintiff is purportedly offering the Medical Witnesses' testimony in connection with her claim for IIED. *See* Pl.'s Opp'n at 11–12 (contending "that the defendant officers caused [the plaintiff's] emotional distress, and intentionally did so by physically mishandling her . . . . In support of her contention, the plaintiff has identified her treating physicians."). Although expert testimony is not always necessary, "D.C. law often requires expert testimony in tort cases even when the facts underlying the plaintiff's injury might seem fairly straightforward." *Davis v. Bud and Papa, Inc.*, 885 F. Supp. 2d 85, 89 (D.D.C. 2012).

Thus, the plaintiff's blanket statement that she "does not need expert testimony to advance her claim for [IIED]," Pl.'s Opp'n at 12, is correct only up to a point:[7] the plaintiff may

---

[7] The court in *Halcomb* summarized the exceptions to the general rule that "expert testimony is necessary to demonstrate a causal link between a defendant's act and a plaintiff's harm in cases presenting medically complicated

testify about her own perception of her physical and mental health before and after the incident, including any pain, fear, or anxiety she experienced during those times, and she may present lay or fact witnesses to testify as to their observations of the plaintiff's emotional distress. To the extent, however, that the plaintiff seeks to associate, connect or link the hospitalization for her pre-existing high risk pregnancy to the defendants' alleged conduct, she stretches the bounds of lay testimony too far into the territory of causation without the requisite expert medical testimony. *See Lasley*, 688 A.2d at 1387.

The plaintiff's reliance on two cases, *Daskalea v. District of Columbia*, 227 F.3d 433, 444 (D.C. Cir. 2000), and *District of Columbia v. Tulin*, 994 A.2d 788, 801–02 (D.C. 2010), for the proposition that expert causation testimony is not necessary for IIED claims, is misplaced. *See* Pl.'s Opp'n at 12–13. In *Daskalea*, the plaintiff had no pre-existing condition and the conduct complained of involved repeated sexual abuse at the hands of prison guards, leading to psychological injuries that were "hardly surprising or unexpected . . . and it does not take an expert to confirm the jury's common sense with respect to both their existence and cause." *See Daskalea*, 227 F.3d at 444. While the plaintiff in *Tulin* did have pre-existing depression, which he asserted was aggravated by his wrongful arrest and imprisonment, the post-jury verdict procedural posture of that case required the D.C. Court of Appeals to make "a concerted effort to reconcile every apparent inconsistency" before ordering a new trial. *See Tulin*, 994 A.2d at 801–02 (quoting *Miller v. Royal Neth. S.S. Co.*, 508 F.2d 1103, 1106 (5th Cir. 1975)). The court found that the jury verdict in *Tulin* was not inconsistent in finding the defendant not liable for

---

questions due to multiple and/or preexisting causes," 610 F. Supp. 2d at 85 (internal quotations and citations omitted), as follows: "'(1) the disability first emerged coincidentally with or very soon after the [alleged] act, or (2) the disability was of a type which by its very nature reflected its cause, or (3) the cause of the injury related to matters of common experience, knowledge, or observation of laymen.'" *Id.* at 85 n. 8 (quoting *Baltimore v. B.F. Goodrich Co.*, 545 A.2d 1228, 1231 (D.C. 1988) (brackets in original)).

wrongful arrest and malicious prosecution and simultaneously finding the defendant liable for

IIED, because a jury could reasonably find that the plaintiff suffered "severe emotional distress

(and plenty of it) in the hours, days, and months that followed" his wrongful arrest, and that

arrest was intentionally caused by the enraged defendant. *See id.*

By contrast, the instant matter involves a serious pre-existing medical condition, a high

risk pregnancy, for which the plaintiff was already being treated. *See* Pl.'s Opp'n at 8. The

plaintiff admits she was hospitalized following her arrest because of complications arising from

her high-risk pregnancy, not from any direct injury suffered at the hands of the defendants. *See*

*id.* at 7–8; *compare id. with Tulin*, 994 A.2d at 801 (arguing plaintiff suffered emotional distress

"including aggravation of a pre-existing depression . . . entirely from his arrest, detention and

criminal prosecution."). The facts of the instant case are far closer to those in *Baltimore v. B.F.*

*Goodrich Co.*, 545 A.2d 1228, 1230–31 (D.C. 1988), where the plaintiff suffered from "an array

of personality disorders and difficulties" prior to the incident giving rise to the suit and, as a

result, his "situation was . . . . 'multifactorial' and highly complicated." In *B.F. Goodrich Co.*,

the D.C. Court of Appeals held that "in cases presenting medically complicated questions due to

multiple and/or preexisting causes . . . expert testimony is required on the issue of causation." *Id.*

at 1231 (internal citations and quotation marks omitted).

The plaintiff asserts that the instant matter is not a complicated medical question, since

she attributes her emotional distress solely to her arrest and cites her fear, anxiousness, and

sleepless nights as being the direct outgrowth of her encounter with the defendants. *See* Pl.'s

Opp'n at 12 ("She was not scared prior to the officers' misconduct . . . she did not have sleepless

nights prior to the officers' misconduct; and she did not worry about the health of her unborn

child or her health prior to the officers' misconduct. In fact, plaintiff's claim for intentional

infliction of emotional distress has as its foundation her preexisting condition.").  While, as noted, the plaintiff is able to put forward this evidence through her own testimony and that of other lay witnesses who observed her, she may not use the testimony of any witness to tie her post-arrest hospitalization to the alleged false arrest, without any expert testimony suggesting that the arrest caused her hospitalization.  Such testimony, from any witness, invites the jury to infer that the defendants' conduct caused her pregnancy complications and resulting hospitalization.  That is an improper inference, absent sufficient expert testimony on causation to sustain it.  Moreover, as the defendants note, that inference would be "potentially devastating to Defendants' case" since it "will necessarily entail a detailed description of inherently distressing circumstances that would end up being improperly imputed to Defendants' conduct."  Defs.' Reply at 7.  The plaintiff simply "avoids acknowledging the inevitability of this inference," *id.*, but the Court may not.  Any testimony or documentary evidence about the plaintiff's hospitalization is "unduly prejudicial" since it would tend "to suggest decision on an improper basis" and must be precluded.  *See Ring*, 706 F.3d at 472.

The defendants, however, ask too much when they request that the plaintiffs' Medical Witnesses be precluded from testifying *at all*.  *See* Defs.' Mot at 1.  The Medical Witnesses may corroborate the plaintiff's own expected testimony about her emotional distress through their own lay observations.  *See supra* Part III.A.  The defendants argue that such testimony from the Medical Witnesses would be cumulative, since the plaintiff has noticed five other witnesses, including family members, who witnessed the defendants' alleged actions and observed the plaintiff after the incident.  *See* JSP at 5–7 (naming neighbors Ronnae Ruer, Emanuel Wilson, Jr. and "Ms. Chew" along with two of the plaintiff's minor children, M.C. and M.D., as potential witnesses); *see also* Defs.' Reply at 6 ("[T]o the extent Plaintiff seeks corroborating testimony[,]

she has listed four other witnesses far better suited to corroborate Plaintiff's alleged distress than her physicians.").

The defendants may well be correct, but it is difficult to assess the cumulative impact of testimony before trial, especially where the factual basis for the plaintiff's claims is not fully developed. *See, e.g.*, *Graves*, 850 F. Supp. 2d at 13–14 (D.D.C. 2011) (declining to rule on motion *in limine* in absence of further factual development of record). The plaintiff's Medical Witnesses' testimony as to their lay impressions of the defendant immediately after the incident is relevant and, since all mention of the hospitalization is precluded, not unduly prejudicial on its face. Thus, complete preclusion of the plaintiffs' Medical Witnesses prior to trial, as requested by the defendants, *see* Defs.' Mot. at 1, is unnecessary. During trial, however, the Court will have the benefit of hearing a complete factual record and will then be able to offer an opinion as to whether proposed testimony by these Medical Witnesses is unduly cumulative.

In sum, because testimony and documentary evidence concerning the plaintiff's hospitalization subsequent to the May 18, 2010 incident are of questionable relevance to the claims at issue and, even if this evidence were relevant, it is unfairly prejudicial to the defendants, all such testimony and evidence must be precluded. The plaintiff's Medical Witnesses may, however, testify as lay witnesses as to what they observed of the plaintiff in the days after the incident without referring, in any way, to the plaintiff's hospitalization.

## IV.    CONCLUSION

For the foregoing reasons, the defendants' Motion in Limine is granted in part and denied in part. The plaintiff may not elicit any testimony, from any witness, regarding the plaintiff's hospitalization, or the causes thereof, after the May 18, 2010 incident. The plaintiff's Medical Witnesses may not offer any expert testimony, but they may offer testimony as lay witnesses as

to their observations of the plaintiff after the incident.  The plaintiff may not elicit any testimony or submit any documentary evidence to the extent that it attributes any of her emotional distress to the hospitalization.  To be clear, there shall be no mention of the plaintiff's hospitalization, from any witness, during the upcoming trial.

An appropriate order accompanies this Memorandum Opinion.

Date: February 11, 2014

_____
BERYL A. HOWELL
United States District Judge